907 So.2d 275 (2005)
John DOE on Behalf of His Minor Children, Jane DOE and Mary Doe, Plaintiffs-Appellees
v.
DESOTO PARISH SCHOOL BOARD and Coregis Insurance Company, Defendants-Appellants.
No. 39,779-CA.
Court of Appeal of Louisiana, Second Circuit.
June 29, 2005.
*277 Cook, Yancey, King & Galloway, by Robert Kennedy, Jr., Shreveport, for Appellants.
Greenwald Law Firm, LLC, by Joseph W. Greenwald, Jr., Shreveport, for Appellees.
Before BROWN, WILLIAMS and LOLLEY, JJ.
LOLLEY, J.
The DeSoto Parish School Board and its liability insurer, Coregis Insurance Company (together the "School Board"), appeal a jury verdict awarding judgment in favor of plaintiffs for injuries sustained due to the negligent supervision of students under its employees' supervision. Plaintiffs answered the appeal contending they were not adequately compensated for their damages. For the reasons assigned, we affirm.

FACTS
This negligent supervision claim arises out of a sexual incident which occurred on a DeSoto Parish school bus. The facts are undisputed that on the night of January 17, 2003, John Doe's two minor twin daughters, Jane Doe and Mary Doe, age 16 years, were passengers on a bus which took them to a high school basketball game in Springhill, Louisiana. In addition to the bus driver, the passengers on the bus included Jane and Mary Doe, the male and female team members, the boys' basketball coach, Larry Hall, the girls' basketball coach, Stephanie Locke, and student team assistants.
When the bus left North DeSoto High School (the "high school"), Coach Hall was seated in the front passenger side of the bus while Coach Locke was seated further back in the bus, between the boys and girls. After departing from the high school, Coach Locke went to the front of the bus and sat in the front seat with Jane *278 Doe. Shortly thereafter, Coach Locke asked Jane Doe to switch seats with another female student who had been initially seated with Coach Locke. Jane Doe then took Coach Locke's original seat which was located right before the section occupied by the boys.
For the return trip following the game, Coach Locke sat in the same front seat she occupied on the outbound trip and Jane Doe sat in the same seat she occupied near the boys. The bus made one stop at a fast food restaurant before continuing on to the high school. During the return trip, some sexual contact occurred between Jane Doe and five male basketball players ranging in age from 17 to 19 years old. At the time the sexual acts were committed, Coach Hall was seated in the front seat, apparently asleep, while Coach Locke occupied the opposite front seat of the bus. Although numerous students on the bus were aware of the incident as it was occurring, the coaches did not become aware of it until the following Monday when some of the female basketball players informed Coach Locke after basketball practice. Coach Locke then called Jane and Mary Doe into her office and questioned them. When first confronted about the allegation of the incident, Jane Doe denied that it had occurred. However, upon further questioning by Coach Locke, Jane Doe acknowledged what had happened. Mary Doe learned of the incident for the first time during this meeting with Coach Locke. The twin sisters were instructed to inform their father and were told that an investigation into the matter would be initiated. Coach Locke then informed Coach Hall of the matter, and he responded that he would question the members of the boys' basketball team. The high school principal and other high school administration were informed of the matter on the next day. A full investigation of the incident ensued.
After gathering information from the parties involved, several student witnesses who were on the school bus that night, and the basketball coaches, the high school administration recommended expulsion of all students involved in the sexual acts. Subsequently, the DeSoto Parish School Board initiated its own investigation, rendering an official report recommending alternative schools for all the students involved. Although the five male students involved in the sexual acts were officially expelled from North DeSoto High School, terms of expulsion were not used in the official report on Jane Doe. However, the school board did recommend that Jane Doe leave North DeSoto High School and attend another area high school.
On July 7, 2003, the girl's father ("John Doe") filed this negligent supervision action against the School Board, Coregis Insurance Company, Coach Locke and Coach Hall, alleging that his minor daughter, Jane Doe, was sexually assaulted by five members of the boys' basketball team and that the alleged sexual assault was caused solely and proximately by the School Board in its failure to properly supervise the students on the bus. John Doe contends there was a strict school policy first implemented by the former principal of North DeSoto High School that the boys' basketball team was to be positioned physically separate and apart from the members of the girls' basketball team while traveling on the bus. Additionally, the adult coaches were to be positioned between the girls' and boys' team while the bus was in transit. John Doe maintains that on this particular night, both coaches were seated in the front of the bus in direct violation of this school policy. He contends that at the time of the alleged assault, the male perpetrators threatened Jane Doe with physical harm and damage to her reputation to frighten her into *279 submission. Coaches Locke and Hall were ultimately dismissed without prejudice on the day the trial commenced. The parties stipulated that at all times pertinent to this incident, the two coaches were acting in the course and scope of their employment with the DeSoto Parish School Board.
After a trial by jury, a verdict was returned in favor of John Doe, individually and on behalf of his daughters, in the amount of $250,000 to Jane Doe and $10,000 each to John Doe and Mary Doe. The jury's findings were as follows:
1. That the School Board had breached its duty of reasonable supervision of the students involved in the incident.
2. That the lack of reasonable supervision by the School Board was a legal cause of the incident.
3. 100% of the fault was allocated to the School Board, and no fault was allocated to either the five boys accused of the sexual assault or Jane Doe.
4. Jane Doe was awarded $50,000 in damages for past and future physical pain and suffering and a combined total of $200,000 in damages for mental anguish  $150,000 for past and future mental anguish and $50,000 for past and future loss of enjoyment of life.
5. John Doe and Mary Doe were each awarded $10,000 in damages for loss or consortium.
The School Board filed a motion for judgment notwithstanding the verdict and a motion for new trial, or, in the alternative, a motion for remittitur. All motions were subsequently denied by the trial court. This appeal ensued.

DISCUSSION
On appeal, the School Board raises the following five assignments of error:
1. That the trial court committed legal error in failing to instruct the jury that, in order to prevail on a claim for negligent supervision against the School Board, John Doe had to first prove his allegation that Jane Doe was the victim of a sexual battery.
2. The jury committed manifest error in failing to allocate fault to the five boys accused of the sexual assault and to Jane Doe.
3. The jury's award of $50,000 in past and future physical pain and suffering was excessive and a clear abuse of discretion.
4. That the jury's combined award of $200,000 for past and future mental anguish and loss of enjoyment of life was excessive and a clear abuse of discretion.
5. The jury's award of $10,000 for loss of consortium to John Doe and $10,000 to Mary Doe for loss of consortium was excessive and a clear abuse of discretion.
Longstanding case law from the Louisiana Supreme Court demands that courts of appeal give great deference to a trier of fact's factual findings based on credibility judgments. See Landiak v. Richmond, XXXX-XXXX (La.03/24/05), 899 So.2d 535; Rosell v. ESCO, 549 So.2d 840 (La.1989), writ denied, 561 So.2d 105 (La.05/11/90). The principles set forth in Rosell have been uniformly affirmed in numerous cases since it was issued. Recently, the Louisiana Supreme Court clarified that principle, stating as follows:
There is no legitimate conflict in testimony where documents or objective evidence so contradict the witness' story, or the story presented by the witness is so internally inconsistent or implausible on its face, that a reasonable fact-finder could not give credence to the witness's testimony. Faced with such circumstances, *280 the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. (Citations omitted).
Henderson v. Nissan Motor Corp., 2003-606 (La.02/06/04), 869 So.2d 62.
However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.02/20/95), 650 So.2d 742, 747.

Negligent Supervision
In its first assignment of error, the School Board contends the trial court erred in failing to instruct the jury that in order to recover damages, John Doe must first prove the allegations of sexual assault. It further claims that a sexual assault did not occur in this case because Jane Doe voluntarily participated in the incident.
The School Board complains that the jury was never instructed that John Doe had to first prove his allegation that Jane Doe was the victim of a sexual battery in order to prevail on his claim. It further argues that the lack of a determination by the jury as to whether Jane Doe freely consented to the sexual acts precludes recovery under Louisiana jurisprudence. It maintains that this reversible error of law requires this court to conduct a de novo review of the facts to determine whether Jane Doe was a willing and voluntary participant in the sexual activities which are the basis of plaintiffs' claim. It urges that the facts adduced at trial overwhelmingly establish that Jane Doe voluntarily participated in the sexual activities in question. We disagree.
Under the provisions of La. C.C. art. 2320, teachers are answerable for the damage caused by their scholars while under their superintendence, but responsibility only attaches when the teachers might have prevented the act which caused the damage, but did not do so. It appears that Louisiana courts have interchangeably analyzed the liability of a school board for damages caused by its students under both La. C.C. arts. 2315 and 2320.
In Wallmuth v. Rapides Parish School Bd., XXXX-XXXX (La.04/03/02), 813 So.2d 341, the Louisiana Supreme Court gave an overview of the prevailing jurisprudence on negligent supervision cases involving school boards. In Wallmuth, the supreme court noted that the court of appeal set out the correct standard of liability regarding the liability of a school board for the actions of its students under La. C.C. art. 2320:
A school board, through its agents and teachers, owes a duty of reasonable supervision over students. La. C.C. art. 2320. The supervision required is reasonable, competent supervision appropriate to the age of the children and the attendant circumstances. This duty does not make the school board the insurer of the safety of the children. Constant supervision of all students is not possible nor required for educators to discharge their duty to provide adequate supervision.
Before liability can be imposed upon a school board for failure to adequately supervise the safety of students, there must be proof of negligence in providing supervision and also proof of a causal connection between the lack of supervision and the accident. "Injury from horseplay between discerning students which, at some stage may pose *281 an unreasonable risk of harm to the participants, does not automatically and of itself render the supervising authority liable." Furthermore, before a school board can be found to have breached the duty to adequately supervise the safety of students, the risk of unreasonable injury must be foreseeable, constructively or actually known, and preventable if a requisite degree of supervision had been exercised. (Citations omitted).
Here, the analysis of the School Board's independent liability is the same under both La. C.C. art. 2315 and 2320, as liability under each statute requires that the School Board breach its duty of reasonable supervision over its students. The causation element is satisfied under La. C.C. art. 2315 if it is proven that the breach was the cause-in-fact of the plaintiff's injuries. In a breach of supervision case, this element can only be satisfied if it is proven that "but for" the lack of reasonable supervision, plaintiff's injuries would have been prevented, which is similar to the "prevention" element of La. C.C. art. 2320.
In reviewing the jurisprudence throughout this state, the Wallmuth court noted that the vast majority of courts had found no liability on the part of school boards for fights occurring between students, or accidents at school, either because the school board did not breach its duty of reasonable supervision, or because the school board or school personnel could not have prevented the incident from occurring. See Adams v. Caddo Parish School Bd., 25,370 (La.App. 2d Cir.01/19/94), 631 So.2d 70, writ denied, 94-684 (La.04/29/94), 637 So.2d 466, finding no liability on the part of the school board under La. C.C. art. 2320, because a second fight between two unsupervised high school girls waiting in the principal's office to be disciplined was unforeseeable and, thus, not preventable; Hunter v. Caddo Parish School Bd., 627 So.2d 772 (La.App. 2d Cir.1993) finding no liability on the part of the school board for injuries to a young student who fell from a climbing tower because the school exercised reasonable supervision over the children and the fall resulted from an impulsive act of the student which could not have been prevented. The jurisprudence cited in Wallmuth, supra, largely focused on a spontaneous act on the part of the students involved, one that would not have been preventable absent constant supervision.
Although Louisiana jurisprudence holds that a school board is not the insurer of the safety of school children, liability will be imposed upon a school board where there is a causal connection between a lack of supervision and an incident which could have been avoided by the exercise of a reasonable degree of supervision. School board employees have a duty to provide reasonable supervision commensurate with the age of the children and the attendant circumstances. Vaughn v. Orleans Parish School Board, XXXX-XXXX (La.App. 4th Cir.11/28/01), 802 So.2d 967, writ denied, XXXX-XXXX (La.06/07/02), 818 So.2d 773.
Diane Troquille, principal of North DeSoto High School until December 2002, testified there was a school policy in place requiring the basketball coaches to sit between the boys and girls on all school athletic trips. Furthermore, testimony at trial indicated that this policy was implemented as a result of prior incidents of sexual misconduct involving students of the high school, including one that had previously occurred on a DeSoto Parish school bus and which received some publicity in a local newspaper. This, along with other school administration testimony, further substantiated testimony given that those prior sexual incidents acted as a *282 catalyst to initiate a school policy separating the boys from the girls when traveling by bus on school-sponsored athletic trips. Although both coaches testified that they were unaware of this policy, apparently the jury found their testimony lacking in credibility. The evidence showed that Coach Locke was originally seated according to the school policy when the bus first left the school premises, but, shortly thereafter, she switched seats with Jane Doe, displacing her to the section in front of the boys' team. "But for" this change of seating arrangement, Jane Doe would not have been placed in a position involving her in this sexual incident. Thus, we find there was ample evidence supporting the existence of this school policy and the coaches' awareness of the school policy and their failure to adhere to it.
It is reasonable to assume that knowledge of these prior sexual incidents involving the high school would place the coaches on notice that a certain level of supervision would be required on this school-sponsored bus trip. Furthermore, this sexual incident was not a "spontaneous act" that could not have been prevented with adequate supervision on the part of the coaches. The record further established that, but for these two coaches' failure to adhere to this school policy, this sexual incident could have been easily avoided.
The evidence clearly supports the jury's finding that John Doe proved by a preponderance of the evidence that the coaches breached their duty of reasonable supervision of the students involved in this incident and that the lack of reasonable supervision was the legal cause of the sexual incident. We find no merit to the School Board's contention of legal error on the trial judge's part for not instructing the jury that John Doe had to first establish a sexual assault had occurred.
Additionally, the School Board contends the trial court erred in failing to instruct the jury that before it can impose liability, it must determine that Jane Doe's participation was not consensual. As stated above, Wallmuth, supra, clearly sets forth the correct standard of liability regarding the liability of a school board for the actions of its students under La. C.C. art. 2320. Here, the School Board failed to administer reasonable supervision of the students involved in this sexual incident. Thus, the issue of Jane Doe's consent, a 16 year-old minor at the time of the incident, is of no relevance as the School Board is statutorily responsible for her fault. See Vaughn, supra.
Moreover, we find that the psychological evidence presented at trial overwhelmingly shows that Jane Doe, although 16 years old at the time of the incident, had an emotional make up of a 10 to 11-year-old child. The record indicated that she had a diminished capacity with full scale I.Q. scores ranging from a 70 to 79. Although there was evidence indicating that she possessed most of the daily living skills, the overall expert testimony showed that her emotional level of maturity was well below the average for her age and much of the expert testimony indicated that her low I.Q. was near borderline retardation. Therefore, despite the testimony given by the other student passengers and the perpetrators that Jane Doe appeared to be a willing participant in the sexual incident, a thorough reading of the record supports a finding that Jane Doe's maturity level and low I.Q. rendered her easily coerced and/or intimidated. Additionally, there was testimony presented that due to her lack of maturity, her father had specifically requested the school administration to keep a careful watch on her when under *283 the supervision of school authority. The record shows that in this instance, the coaches failed to honor John Doe's request. Considering the psychological evidence that Jane Doe had a diminished emotional maturity and a low I.Q., we find the School Board's allegation that Jane Doe's participation was not coerced to be without merit.
The evidence showed that there was a history of prior sexual incidents at the high school and that there was a school policy in place for the coaching staff to be seated in between the boys and girls while in transit. Here, it was foreseeable that such a sexual incident could occur without a reasonable degree of supervision. The record established that the two coaches failed to render even the minimum expected level of supervision the night of the incident. There is no question that "but for" placing an emotionally immature minor in a position in close proximity to the boys and failing to properly supervise the students in their charge by either not paying close attention or even staying awake while on duty, the injuries sustained by Jane Doe would not have occurred. Acting in loco parentis, the coaches, as empowered representatives of the high school and School Board staff, had a duty to monitor the students under their supervision with reasonable care.[1] Considering that the bus contained both male and female students, that there was a prior history of sexual misconduct on one of the school sponsored outings which had been publicized in a local newspaper, that at least one of the male perpetrators had previously been expelled from the school for sexual misconduct, and that the coaches were aware of Jane Doe's immature nature, we find the lack of supervision in this case was reprehensible. We conclude that a reasonable degree of supervision of those students while in transit would have prevented this incident. Thus, we find no merit to appellant's first assignment of error.

Allocation of Fault
In its second assignment of error, the School Board contends the jury committed manifest error in failing to allocate fault to the five boys accused of the sexual assault and to Jane Doe. We do not find that such an allocation of fault would have a practical effect under La. C.C. art. 2320. In Vaughn, supra, a second-grade student suffered a sexual assault by a fellow classmate during class while the teacher supervised the class. There the court held that on a negligent supervision claim, fault did not have to be assessed to all parties involved in the sexual assault, including the fault of the victim and fellow student, as such an assessment would have no practical effect. The teacher, who was responsible for reasonable supervision of the students involved in the incident that occurred in her classroom during school hours, was statutorily responsible for the fault of the students pursuant to La. C.C. art. 2320. In the instant case, the parties stipulated that the coaches were acting in the course and scope of their employment with the School Board at the time of the incident. The jury made a finding that the two coaches breached the reasonable degree of supervision owed the students involved in this incident and that breach was the cause of Jane Doe's injuries. Thus, we find that the assessment of fault to Jane Doe or the five male student perpetrators is not appropriate in this negligent supervision claim.

*284 Damages

The School Board's last three assignments of error concern the amount of damages awarded to appellees.

Past and Future Physical Pain & Suffering
The School Board argues that the jury's award of $50,000 in past and future physical pain and suffering to Jane Doe was excessive and a clear abuse of discretion. We disagree.
Before an appellate court will disturb an award made by the trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award. Sentry Insurance v. Marks, 398 So.2d 24 (La.App. 4th Cir.1981). Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive. Thus, the initial inquiry must always be directed at whether the trial court's award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact's much discretion. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may, on appellate review, for articulated reason be considered either excessive, or insufficient. Carollo v. Wilson, 353 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977); Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Only after such a determination of abuse of discretion has been reached, is a resort to prior awards appropriate. See Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976) for purposes of then determining what would be an appropriate award for the present case.
In the initial determination of excessiveness or insufficiency, an examination of prior awards has a limited function  if indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards not selected past awards, but the mass of them for truly "similar" injuries. See Coco supra.
However, absent an initial determination that the trial court's very great discretion in the award of general damages has been abused under the facts of this case, the reviewing court should not disturb the trier of fact's award. Rosell, supra.
After a review of the trial record, we must conclude that the trier of fact did not abuse its discretion in awarding Jane Doe $50,000 for past and future physical pain and suffering. Although the evidence does not show extensive physical injury to Jane Doe as a result of this sexual incident, we conclude that the award, even if on the high end, would not be considered excessive considering the physical ordeal she endured.

Past and Future Mental Anguish
The School Board argues that the jury's award in the amount of $200,000 for past and future mental anguish and loss of enjoyment of life to Jane Doe was excessive. Considering the totality of the psychological evidence evaluating Jane Doe, we cannot say that this award for past and future mental anguish and loss of enjoyment of life is excessive. Although there was evidence that after the incident, Jane Doe fared well at her new school, the jury was in a better position to evaluate the *285 psychological evidence offered and to assess the mental anguish she suffered while observing her demeanor and overall well being. Thus, we find no abuse of discretion in this regard.

Loss of Consortium
Finally, the School Board alleges that the jury's award of $10,000 each to John Doe and to Mary Doe for loss of consortium was excessive and a clear abuse of discretion. In general, loss of consortium has seven elements: (1) loss of love and affection, (2) loss of society and companionship, (3) impairment of sexual relations, (4) loss of performance of material services, (5) loss of financial support, (6) loss of aid and assistance, and (7) loss of fidelity. The parents' claim for loss of service and society of their child is essentially the same, but excludes the sexual component. A child may sustain physical injury without necessarily causing his parents a loss of consortium. Bell v. USAA Cas. Ins. Co., 30,172 (La.App. 2d Cir.01/21/98), 707 So.2d 102, writs denied, XXXX-XXXX and XXXX-XXXX (La.05/08/98), 718 So.2d 434.
Considering the emotional turmoil this incident caused John Doe and Mary Doe and the apparent disharmony initially rendered to the relationship of the plaintiffs, one cannot say this award was an abuse of the wide discretion afforded the jury. Although the record indicates much healing has occurred with these familial ties, the evidence shows this was not without a great deal of counseling and reevaluation of many familial issues. Thus, we find this last assignment of error without merit.

Answer to Appeal
Last for our consideration is plaintiffs' assertion that the jury awards were inadequate to compensate them for the injuries they received. Although we acknowledge that this entire ordeal must have wreaked havoc on this family, we cannot say that the jury awards are inadequate. Rosell, supra. Therefore, we find plaintiffs' claim to be without merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is hereby affirmed. Costs of these proceedings are assessed to the School Board.
AFFIRMED.
NOTES
[1] The term "in loco parentis" means in the place of a parent, and a "person in loco parentis" may be defined as one who has assumed the status and obligations of a parent without formal adoption. State v. Bradford, 259 La. 381, 250 So.2d 375 (1971).