978 So.2d 426 (2007)
Jane DOE Individually and on behalf of her minor children including Mary Doe
v.
EAST BATON ROUGE PARISH SCHOOL BOARD, J.K. Haynes Elementary Charter School, ABC Insurance Company, and DEF Insurance Company.
No. 2006 CA 1966.
Court of Appeal of Louisiana, First Circuit.
December 21, 2007.
Writ Denied March 28, 2008.
*430 David L. Bateman, Baton Rouge, LA, for Plaintiff-Appellant, Jane Doe, individually and on behalf of her minor children, including Mary Doe.
Gus A. Fritchie, III, Edward W. Trapolin, New Orleans, LA, for Defendant-Appellee, J.K. Haynes Elementary Charter School.
Harold J. Adkins, Alejandro R. Perkins, Baton Rouge, LA, for Defendant-Appellee, East Baton Rouge Parish School Board.
Before PARRO, GUIDRY, and McCLENDON, JJ.
PARRO, J.
The plaintiff appeals the judgment of the trial court entered in conformity with the special verdict of the jury, challenging certain legal rulings by the trial court, contesting the jury's allocation of fault, and seeking an increase in the amount of damages awarded by the jury. For the reasons that follow, we affirm.

FACTUAL AND PROCEDURAL HISTORY
This matter involves the sexual assault of a young girl by one of her fellow students on a school bus. At the time of the assault, the victim, J.Y.,[1] was an eight-year-old third-grade student at J.K. Haynes Elementary Charter School (Haynes Elementary).[2] The other student involved in the incident, H.B., was a twelve-year-old boy in the fifth grade at Haynes Elementary. According to the testimony at trial, H.B. was much larger than J.Y. and many of the other students. The assault occurred on a school bus owned, staffed, and maintained by the East Baton Rouge Parish School Board (School Board).[3]
According to the procedure established by the School Board, the buses carrying students from the various schools were to enter a transfer point and park in a line next to each other. Across from these buses was to be a line of empty buses. Once all of the buses had arrived from the different schools, a School Board employee would signal the students to exit their buses and transfer to one of the empty buses. After all of the students had changed buses, the newly filled buses would take the students to their homes. Because all of the buses do not arrive at the transfer point at the same time, the students were required to remain on their original buses until all of the buses had arrived. As a result, some students may remain on these buses for twenty to thirty minutes before being allowed to transfer to a new bus. During this time, School *431 Board policy requires the students to remain seated in their seats on the buses. In addition, the bus drivers are required to remain in their seats on the buses to supervise the students, except in a case of extreme emergency. Pursuant to the established procedure, Faye Hunt, the school bus driver employed by the School Board, picked up J.Y., H.B., and other students at Haynes Elementary in the school bus after school on May 9, 2002, and drove them to the transfer point on Lobdell Avenue in Baton Rouge.
J.Y. testified that on the date of the assault, she boarded the bus at Haynes Elementary and went to the last seat. She took out her homework and then lay down on the seat to save a seat for her younger sister, who also rode the bus. H.B. approached her and told her to push over and let him sit on the seat with her. According to J.Y., H.B. told her that when they arrived at the transfer point, she was going to perform an oral sex act on him. She responded that she would not do so, and when the bus arrived at the transfer point, J.Y. attempted to get out of the seat. However, H.B. physically blocked her path by getting on his knees and putting his hand on the seat in front of them. After J.Y. refused several times to perform the act, H.B. pulled down his pants. J.Y. testified that she eventually complied because she was afraid of H.B. According to J.Y., Ms. Hunt was not on the bus at the time of the assault, which took place over a ten-minute period in the back of the bus. J.Y. acknowledged that she did not tell Ms. Hunt about the assault after the fact, because she thought she would get into trouble.
Willis Fitzgerald, the transportation supervisor for the School Board, testified that the bus drivers are trained in the proper way to supervise the students while they wait at the transfer point. According to the procedure established by the School Board, the bus drivers are to remain seated in their seats, where they can supervise the students by using the seven mirrors placed in the front of the bus for that purpose. In addition, the drivers are taught to be aware of the possibility of sexual harassment on the bus. According to Mr. Fitzgerald, the School Board's policy of having the bus drivers remain on the bus acts as a deterrent to inappropriate action by the students, but it also allows the driver to be in a position to stop an incident from occurring. Mr. Fitzgerald acknowledged that there had been a history of problems at the transfer point, and that there had been more than one thousand reports of physical and sexual altercations at the transfer point in the five years immediately preceding the assault on J.Y. He further testified that the School Board had hired additional security to deal with these issues.
Ms. Hunt testified that she had driven students from Haynes Elementary to the transfer point for approximately two or three years. She acknowledged that she had received training that included instruction regarding procedures at the transfer point. Nevertheless, Ms. Hunt testified that she would sometimes get off the bus to talk to the other drivers, even though she knew it was against the rules. She insisted that she had no recollection of the events on the date of the assault, and that she knew nothing about it until she received a subpoena to give her deposition two or three years after the assault. However, she conceded that if she had been sitting in her seat on the bus as required by the policy, she could have seen a student kneeling on a seat and pulling down his pants in the back of the bus, and that she would have stopped the assault.
J.Y.'s mother filed suit, individually and on behalf of J.Y. and her younger sister, *432 for damages arising out of the sexual assault. Named as defendants in the petition were the School Board, Haynes Elementary, and two fictitious insurance companies. The petition did not name H.B., H.B.'s parents, or Ms. Hunt as defendants.
After a trial,[4] the jury returned a verdict allocating seventy-five percent of the fault for the assault to H.B. and twenty-five percent of the fault to the School Board. No fault was allocated to Haynes Elementary. The jury awarded past medical expenses of $2,900, as well as future medical expenses of $25,000. In addition, the jury awarded damages of $10,000 for past and future mental pain and suffering, as well as another $10,000 for loss of enjoyment of life. The jury did not award any damages for J.Y.'s alleged physical injuries or for her mother's claim of loss of consortium.[5] The trial court signed a judgment in accordance with the jury verdict on May 8, 2006. The plaintiff subsequently filed a motion for judgment notwithstanding the verdict or, alternatively, a new trial, which was denied by the trial court. This appeal by the plaintiff followed.

DISCUSSION
Vicarious Liability
In her first assignment of error, the plaintiff contends that the trial court erred as a matter of law in not imposing vicarious liability on the defendants for negligent supervision under LSA-C.C. art. 2320, which provides, in pertinent part:
Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.
Prior to trial, the trial court requested briefs on the issues of allocation of fault and vicarious liability. After reviewing these briefs and allowing the attorneys for the parties an opportunity to present oral argument, the trial court ruled that the jury would be allowed to allocate a percentage of fault to H.B. as an intentional tortfeasor who had not been named as a defendant in the suit. The trial court further ruled that the fault of the intentional tortfeasor would not be imputed to either defendant under the theory of vicarious liability. On appeal, the plaintiff does not contest the trial court's determination that some fault must be apportioned to H.B.; rather, the plaintiff argues that the School Board and Haynes Elementary should be vicariously liable for the percentage of fault assigned to H.B.
As an initial matter, we note that the plaintiff has referred to the liability it seeks to impose on Haynes Elementary and the School Board for the fault of H.B. as vicarious liability under LSA-C.C. art. 2320. However, the Louisiana Supreme Court has held that LSA-C.C. art. 2320 is not a true "vicarious liability" statute, as it requires independent fault on the part of a school board in that the school board is *433 only liable for damages caused by students under their supervision when the school board, the teacher, or other school authorities might have prevented the act that caused the damages and have not done so. See Wallmuth v. Rapides Parish School Board, 01-1779 (La.4/3/02), 813 So.2d 341, 349. Specifically, Article 2320 provides that responsibility only attaches when the "employers" or "teachers . . . might have prevented the act which caused the damage, and have not done it." Accordingly, we must first address the independent liability of the School Board and Haynes Elementary.
Schools and school boards, through their employees or teachers, owe a duty of reasonable supervision over students. The supervision required is reasonable, competent supervision appropriate to the age of the children and the attendant circumstances. See id. at 346. However, this duty does not make the school or school board the insurer of the safety of the children. Constant supervision of all students is not possible or required for employees or teachers to discharge their duty to provide adequate supervision. Before liability can be imposed upon a school or school board for failure to adequately supervise the safety of students, there must be proof of negligence in providing supervision and also proof of a causal connection between the lack of supervision and the accident. Id. Further, the unreasonable risk of injury must be foreseeable, constructively or actually known, and preventable, if the requisite degree of supervision had been exercised. Frazer v. St. Tammany Parish School Board, 99-2017 (La.App. 1st Cir.12/22/00), 774 So.2d 1227, 1232, writ denied, 01-0233 (La.3/23/01), 787 So.2d 1001.
It is undisputed that some fault for the assault was allocated to the School Board.[6] The assault took place on a bus owned and maintained by the School Board, while the students were under the supervision of Ms. Hunt, a School Board employee. Ms. Hunt acknowledged that she violated the rules established by her supervisors concerning the procedures at the transfer point, and she further acknowledged that she could have prevented the assault if she had been on the bus as required. Moreover, the evidence in the record indicates that there had been numerous assaults at the transfer point in the five years immediately preceding the incident. The fault of the School Board may arise from its own acts or failures to act, or from the acts of its employees under the doctrine of respondeat superior. See Moreau v. Landry, 305 So.2d 671, 672 (La.App. 1st Cir. 1974); LSA-C.C. art. 2320. Thus, the School Board was properly allocated a percentage of fault for the assault.[7]
We now turn to the question of whether the School Board is vicariously liable for the percentage of fault allocated to H.B., pursuant to the second paragraph of LSA-C.C. art. 2320.[8] In support of her *434 argument that the fault of H.B. should be imputed to the School Board, the plaintiff relies primarily on Vaughn v. Orleans Parish School Board, 01-0556 (La.App. 4th Cir.11/28/01), 802 So.2d 967, writ denied, 02-0005 (La.6/7/02), 818 So.2d 773, and Doe v. DeSoto Parish School Board, 39,779 (La.App. 2nd Cir.6/29/05), 907 So.2d 275, writ denied. 05-2020 (La.2/10/06), 924 So.2d 167.
In Vaughn, a boy in the second grade was sexually assaulted by a fellow student while the teacher was supervising the class. The victim's parents filed suit against the teacher and the Orleans Parish School Board for negligent supervision. After trial, the trial court found that the teacher was negligent in her supervision of the students and awarded damages to the plaintiffs. No fault was assessed to the victim or the other students involved in the assault. The school board appealed, contending that the trial court erred in failing to assess the fault of all individuals involved in the incident.[9]Vaughn, 802 So.2d at 968. The Fourth Circuit disagreed, finding that an allocation of fault among the students would have no practical effect. Specifically, the court found that no such allocation was necessary, because the teacher and her employer, the school board, were responsible for the damages caused by any fault of the students pursuant to LSA-C.C. art. 2320. See id. at 970.
In Doe, a sixteen-year-old girl was sexually assaulted by five members of the boys' basketball team while she was a passenger on a school bus transporting her to and from a high school basketball game. In addition to the bus driver, the bus was transporting the victim, her twin sister, the members of the boys' basketball team and their coach, the members of the girls' basketball team and their coach, and various student assistants. Doe, 907 So.2d at 277. The school had a policy requiring the basketball coaches to sit between the boys and girls on all athletic trips. The policy apparently was implemented in response to prior incidents of sexual misconduct involving students of the school. Id. at 281-282. The coach of the girls' team began the trip seated between the boys and girls as required by the policy; however, she eventually switched seats with the victim and sat in the front of the bus, in a seat across from the coach of the boys' team. This switch placed the victim in a seat right in front of the boys' team, where the assault occurred. Id. at 282. At trial, the jury found that the DeSoto Parish School Board was negligent in its supervision of the students and awarded damages to the plaintiffs, allocating one hundred percent of the fault to the school board and none to any of the five boys accused of the assault.[10]Id. at 279. The school board appealed, asserting five assignments of error, including one assignment that the jury erred by not allocating any fault to the boys accused of the assault. However, relying on Vaughn, the Second Circuit held that allocating fault to the boys would have no practical effect under the facts and circumstances of the case. Id. at 283.
The trial court in the matter before this court declined to follow these cases, finding them in conflict with certain holdings of this court. In Bell v. Ayio, 97-0534 (La.App. 1st Cir.11/13/98), 731 So.2d 893, *435 895, April Bell was traveling on a school bus, when another student from her school threatened to beat her up. Ms. Bell informed the bus driver, Frank Ayio, of the threat. As a result, when the bus stopped at Cohn Elementary School, Mr. Ayio put Ms. Bell and the other student, Fatonya Richard, off the bus and advised a teacher to get a principal. Mr. Ayio then reboarded the bus to move it out of the way of the other buses attempting to drop off students. While he was moving the bus, Ms. Richard attacked Ms. Bell, causing her substantial injuries. Ms. Bell's mother filed suit against Mr. Ayio and his employer, the West Baton Rouge Parish School Board, but did not name Ms. Richard or her parents as defendants. After a trial on the merits, the trial court ruled in favor of the plaintiff, rendering judgment against Mr. Ayio and the school board. The defendants appealed, asserting several assignments of error.
In addressing the claims raised on appeal, this court determined that the trial court erred in failing to quantify the fault of Ms. Richard as required by LSA-C.C. art. 2323. Finding that this was legal error on the part of the trial court, this court subjected the liability issue to a de novo review of the record. Id. at 897. Based on that review, this court found that Mr. Ayio was negligent; however, this court further determined that Mr. Ayio's fault was slight when compared to that of Ms. Richard. Accordingly, this court allocated eighty-five percent of the fault for Ms. Bell's injuries to Ms. Richard and fifteen percent of the fault to Mr. Ayio, with the school board being vicariously liable for the fault of Mr. Ayio as its employee. Id. at 900.
Likewise, in Frazer, 774 So.2d at 1231-32, this court determined that a de novo review of the record was proper after finding that the trial court had erred in failing to compare the fault of all individuals involved in a physical altercation that occurred between several students immediately after they had disembarked from the school bus on their way home. After applying the de novo review, this court assessed twenty percent of the fault for the plaintiff's injuries to the school board as the result of its employee's negligence. The remaining eighty percent of the fault was allocated to the plaintiff and the students who attacked him. Id. at 1233-34.
We note that Vaughn and Doe involve the issue of the vicarious liability of a school board for the actions of students under a teacher's supervision. In contrast, the students in Bell and Frazer were under the supervision of non-teacher school employees. Because the matter currently before this court involves students under the supervision of a bus driver, a non-teacher, we find Vaughn and Doe inapplicable to this matter.
The issue of a school board's vicarious liability was addressed by the supreme court in Wallmuth. In that case, the plaintiffs claimed that the school board was vicariously liable for the damage caused by three students who attacked another student in the locker room after a physical education class. The supreme court ultimately determined that the school board was not vicariously liable for the fault of the students; however, this finding was based on the court's determination that the school board was not independently liable for the attack, because the attack was unforeseeable and not preventable. The supreme court did leave open the possibility that the school board could be vicariously liable for the actions of students under the supervision of teachers in other circumstances. See Wallmuth, 813 So.2d at 349.
Nevertheless, after an analysis of the terms of LSA-C.C. art. 2320, we find that *436 the School Board is not vicariously liable for the actions of H.B. under the facts and circumstances of this case. As noted previously, the relevant portion of Article 2320 arguably imposes liability on teachers for the damage caused by their students while under their supervision. The plaintiff's argument for imposing vicarious liability on the School Board for the fault of H.B. apparently is based upon an interpretation of Article 2320 that would impose the same liability as that of teachers on school bus drivers in their capacities as employees of the School Board. We disagree.
The starting point for the interpretation of any codal article is the language of the article itself. See Burnette v. Stalder, 00-2167 (La.6/29/01), 789 So.2d 573, 577. Generally, courts begin such an interpretation with the premise that legislation is the solemn expression of legislative will, and that the interpretation of a law involves a search for the legislature's intent. LSA-C.C. art. 1; Falgout v. Dealers Truck Equipment Co., 98-3150 (La.10/19/99), 748 So.2d 399, 401. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9. Moreover, the words of a law must be given their generally prevailing meaning. LSA-C.C. art. 11.
In light of these principles, we note that by its relevant terms, LSA-C.C. art. 2320 discusses the liability of teachers.[11] Clearly, Ms. Hunt was employed as a bus driver and not as a teacher as that term is commonly understood. In addition, we note that Vaughn, Doe, and Wallmuth all involve incidents that occurred while the students were under the immediate supervision of teachers, not bus drivers.[12] Accordingly, we find that the School Board is not vicariously liable for the fault of H.B. under the facts and circumstances of this case.[13]
We next consider the liability of Haynes Elementary.[14] At the time of the assault, the students were no longer on the campus of Haynes Elementary, as they had been transported to the transfer point in the school bus. Clearly, Haynes Elementary did not exert any control or supervision over its students once they had *437 left the school campus. Moreover, the School Board owned and maintained the bus on which the incident occurred, and there is no evidence in the record to suggest that Haynes Elementary exercised any control or authority over the buses, the bus drivers, or the procedures at the transfer point. Thus, we agree with the jury's finding that no independent fault should be allocated to Haynes Elementary in this matter. Because no independent fault may be attributed to Haynes Elementary, the school cannot be vicariously liable for the fault of H.B. See Wallmuth, 813 So.2d at 349.
Common Carrier Doctrine
In her second assignment of error, the plaintiff argues that the trial court erred as a matter of law in not instructing the jury on the common carrier doctrine established in the jurisprudence. It is well settled in Louisiana jurisprudence that the owner and operator of a school bus is classified as a "common carrier," owing a heightened standard of care to the passengers he or she undertakes to transport. Amos v. St. Martin Parish School Board, 00-808 (La.App. 3rd Cir.12/6/00), 773 So.2d 300, 302. As such, when an injury to a passenger occurs, the burden shifts to the defendant carrier to show that he or she was free of even the slightest negligence contributing to the resulting injury. Id.
At trial, the plaintiff requested that the trial court instruct the jury on the common carrier doctrine; however, the trial court declined. The trial court determined that at the time of the assault, the bus was stopped at the transfer point and was not performing its function of transporting passengers. According to the trial court, the bus and its driver were merely performing a baby-sitting function at that time. Thus, the court concluded that the common carrier doctrine was not applicable to the matter. On appeal, the plaintiff contends that the failure of the trial court to instruct the jury on the common carrier doctrine interdicted the jury's factual findings on the issue of the allocation of fault. Thus, the plaintiff suggests that this court should review this issue de novo and allocate the majority of the fault for the assault to the defendants.
It is well settled in Louisiana jurisprudence that an appellate court must exercise great restraint before it reverses a jury verdict because of erroneous jury instructions. Nicholas v. Allstate Insurance Company, 99-2522 (La.8/31/00), 765 So.2d 1017, 1023. The basis for this rule of law is that trial courts are given broad discretion in formulating jury instructions, and it is well accepted that a trial court judgment will not be reversed as long as the charge correctly states the substance of the law. Id. However, when the jury verdict is based on instructions that were faulty in a critical regard, the verdict is tainted and is not entitled to a presumption of regularity. Billiot v. Terrebonne Parish Sheriff's Office, 98-0246 (La.App. 1st Cir.2/19/99), 735 So.2d 17, 21, writ denied, 99-1376 (La.7/2/99), 747 So.2d 22. The general rule is that where an erroneous jury instruction is given that constitutes reversible error, the jury decision should be set aside, and the appellate court should undertake a de novo review of the record and implement its own judgment based on the evidence. Id. In a jury trial, the judge is not required to give the instructions submitted by either party; however, the trial judge is obligated to give instructions that properly reflect the law applicable in light of the pleadings and facts in each case. Adequate instructions are those that fairly and reasonably point out the issues presented by the pleadings and evidence and that provide correct principles of law for the jury's application *438 to the facts. Id. Ultimately, the determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice. Nicholas, 765 So.2d at 1023.
In this case, the trial court charged the jury on Louisiana's law of liability, quoting LSA-C.C. art. 2315 and generally explaining that the plaintiff must prove all three essential elements of fault, causation, and damages by a preponderance of the evidence in order to prevail. The trial court further instructed the jury in accordance with LSA-C.C. art. 2323, stating that if the jury determined that the plaintiff had established her claims and damages, it was required to assess a degree or percentage of fault to all persons causing or contributing to the injury. The plaintiff contends that the failure of the trial court to instruct the jury on the common carrier doctrine improperly maintained the burden of proof on the plaintiff to prove the fault of the School Board, rather than shifting the burden to the School Board to absolve itself of fault in the incident. Without resolving the issue of whether the common carrier doctrine is applicable to the facts of this case, we determine that the failure of the trial court to instruct the jury on the doctrine does not constitute reversible error.
As discussed above, the common carrier doctrine merely establishes a shifting burden of proof on the issue of liability, such that the common carrier must demonstrate that it was free from even the slightest negligence or fault contributing to the plaintiff's injuries in order to absolve itself from liability. However, the doctrine does not impose a specific percentage or degree of fault on the common carrier, nor does it abrogate the requirement of LSA-C.C. art. 2323 that a percentage of fault be allocated to all persons causing or contributing to the injury. In this case, the jury clearly found that the School Board was at fault in the incident and that this fault was a legal cause of the injury to J.Y. Thus, the issues of fault and liability were decided in favor of the plaintiff regardless of which party bore the burden of proof.[15] The plaintiff's objection is to the percentages of fault allocated to the respective tortfeasors, which would not be affected by an instruction on the common carrier doctrine. Therefore, we find no merit in this assignment of error.
Allocation of Fault
After finding that both H.B. and the School Board were at fault in the incident and that the fault of each was a legal cause of J.Y.'s injuries, the jury allocated seventy-five percent of the fault to H.B. and twenty-five percent to the School Board. On appeal, the plaintiff contends that the jury was manifestly erroneous in allocating the majority of the fault to H.B. and suggests that this court should reallocate fault.
An appellate court may only reallocate fault if it finds the trial court was clearly wrong or manifestly erroneous in its allocation of fault. See Clement v. Frey, 95-1119, 95-1163 (La.1/16/96), 666 So.2d 607, 611. Pursuant to this standard, the two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court; and 2) whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Even though an appellate court may feel its own evaluations and inferences are as reasonable as the fact finder's, *439 reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Barham & Arceneaux v. Kozak, 02-2325 (La. App. 1st Cir.3/12/04), 874 So.2d 228, 240, writ denied, 04-0930 (La.6/4/04), 876 So.2d 87.
The evidence in the record supports the jury's conclusion that the majority of the fault should rest with H.B.J.Y. testified that H.B. began to threaten her shortly after they boarded the bus before they reached the transfer point. However, there is no evidence in the record to suggest that Ms. Hunt was aware of these threats at any time, and J.Y. testified that she never told Ms. Hunt about the threats or the assault. In fact, Ms. Hunt testified that she did not know about the incident at all, until she was served with a subpoena several years later. Further, the undisputed evidence in the record demonstrates that the School Board had no prior knowledge that H.B. might commit such an assault. Although the School Board's employee, Ms. Hunt, certainly had the responsibility for supervising the students at the transfer point, the fault of Ms. Hunt and the School Board is slight when compared to that of the intentional tortfeasor, H.B. Accordingly, we find that the jury's allocation of seventy-five percent of the fault to H.B. and twenty-five percent to the School Board is supported by the record and is not manifestly erroneous.
Damages
After trial, the jury awarded J.Y. past medical expenses of $2,900, as well as future medical expenses of $25,000. In addition, the jury awarded damages of $10,000 for past and future mental pain and suffering, as well as another $10,000 for loss of enjoyment of life. However, the jury declined to award damages to J.Y. for physical pain and suffering or to J.Y.'s mother for loss of consortium. In her final assignment of error, the plaintiff contends that the jury erred: (1) in failing to award any amount to J.Y. for physical pain and suffering; (2) in awarding only $10,000 for past and future mental pain and suffering; (3) in awarding only $10,000 for loss of enjoyment of life; and (4) in not making any award to J.Y.'s mother for her loss of consortium.
The assessment of the appropriate amount of damages by a jury is a question of fact entitled to great deference on review. Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70, 74. The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific. Furthermore, the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
The plaintiff first complains that the trial court erred in failing to make any award to J.Y. for physical pain and suffering, while, at the same time, making an award for future medical expenses. However, as the plaintiff concedes, such awards by a jury do not automatically require a reversal. Instead, when the jury has awarded special damages but has declined to award general damages, the reviewing court must determine whether the *440 jury's finding is so inconsistent as to constitute an abuse of discretion. Green v. K-Mart Corp., 03-2495 (La.5/25/04), 874 So.2d 838, 843-44.
The relevant testimony at trial focused largely on J.Y.'s emotional or mental response to the assault, rather than on any physical injuries she may have suffered. Dr. Alicia Pellegrin, a clinical psychologist who treated J.Y., testified that J.Y.'s mother had advised her that J.Y. had exhibited inappropriate emotional responses and significant fluctuations in mood since the incident. Dr. Pellegrin further testified that according to J.Y.'s mother, J.Y. had become withdrawn and secluded since the incident and had become less concerned with her hygiene. Based on the information from J.Y.'s mother, the reports of J.Y.'s teachers, and her own observations, Dr. Pellegrin determined that J.Y. was in denial concerning her emotional issues. According to Dr. Pellegrin, J.Y.'s behavior since the incident was suggestive of a compulsive problem that could be the early signs of a psychotic problem, a thought disorder, or an anxiety condition. Because J.Y. was in denial and not addressing the issues concerning the assault, Dr. Pellegrin opined that J.Y. would have emotional problems as she got older. Dr. Pellegrin testified that J.Y. would ultimately need to be treated by a therapist who had been specially trained to work with individuals who have experienced sexual trauma.
After a thorough review of the record, we do not find the jury's finding to be so inconsistent as to be an abuse of discretion. While her mother testified that she took J.Y. to the doctor to get her tested for diseases after the incident, there is no evidence in the record that J.Y. contracted any disease or suffered any physical injury as a result of the assault. Rather, it is clear that the primary focus of the medical testimony at trial was on J.Y.'s future emotional or mental state, and not on any alleged physical injury. The jury reasonably could have concluded that J.Y. would need additional medical treatment to alleviate the emotional trauma she sustained as a result of the assault, without finding any physical pain and suffering. Accordingly, we find no error in the jury's failure to award damages for physical pain and suffering.
The plaintiff also contends that the jury erred in failing to award J.Y.'s mother damages for loss of consortium, and that the jury's award of damages for past and future mental pain and suffering and loss of enjoyment of life were abusively low. However, as noted above, the assessment of an appropriate amount of damages by a jury is a question of fact, and an appellate court should not disturb a jury's award of general damages unless it is demonstrated that the award is ah abuse of the jury's vast discretion in matters of quantum. After a thorough review of the record, we find no such abuse of discretion.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Each party is to bear its own costs of appeal.
AFFIRMED.
McCLENDON J. concurs and assigns reasons.
GUIDRY, J. dissents and assigns reasons.
McCLENDON, J., concurring.
I concur with the result reached by the majority given that the negligent supervision herein was by a bus driver as opposed to a teacher. I further find that the question of whether vicarious liability may be imposed on a school board for the intentional tortious acts of its students, under the direct supervision of a teacher, is a *441 question that is not before us in this particular case. In addition, while I find the damage award to be low, I cannot say that it was a clear abuse of the vast discretion afforded the trier of fact.
GUIDRY, J., dissenting.
I respectfully dissent from the majority opinion on the issue of the school board's vicarious liability for the tortious actions of its student. As a preliminary matter, I believe the majority errs in relying on Frazer v. St. Tammany Parish School Board, 99-2017 (La.App. 1st Cir.12/22/00), 774 So.2d 1227, writ denied, 01-0233 (La.3/23/01), 787 So.2d 1001 and Bell v. Ayio, 97-0534 (La.App. 1st Cir. 11/13/98), 731 So.2d 893, because the court in those cases only addressed the issue of a school board's vicarious liability for the actions of its employees; it did not address the liability of a school board for the actions of its students. Accordingly, those cases are not controlling in the instant matter. Conversely, the court in Vaughn v. Orleans Parish School Board, 01-0556 (La.App. 4th Cir.11/28/01), 802 So.2d 967, writ denied, 02-0005 (La.6/7/02), 818 So.2d 773 and Doe v. DeSoto Parish School Board, 39,779 (La.App. 2nd Cir.6/29/05), 907 So.2d 275, writ denied, 05-2020 (La.2/10/06), 924 So.2d 167 did specifically address the liability of a school board for the actions of its students. Thus, Vaughn and Doe are applicable, or at least, persuasive authority herein.
Furthermore, I believe that the majority improperly distinguishes between school board employees who are "teachers" and those who are not and, in so doing, fails to analyze the school board's liability for the actions of its student under the second paragraph of LSA-C.C. art. 2320. In Wallmuth v. Rapides Parish School Board, 01-1779 (La.4/3/02), 813 So.2d 341, the supreme court noted, as follows:
[T]he correct standard of liability regarding the liability of a school board for the actions of its students under La. C.C. art. 2320 is as follows:

A school board, through its agents and teachers, owes a duty of reasonable supervision over students. The supervision required is reasonable, competent supervision appropriate to the age of the children and the attendant circumstances. This duty does not make the school board the insurer of the safety of the children. Constant supervision of all students is not possible nor required for educators to discharge their duty to provide adequate supervision.

Before liability can be imposed upon a school board for failure to adequately supervise the safety of students, there must be proof of negligence in providing supervision and also proof of a causal connection between the lack of supervision and the accident. . . . Furthermore, before a school board can be found to have breached the duty to adequately supervise the safety of students, the risk of unreasonable injury must be foreseeable, constructively or actually known, and preventable if a requisite degree of supervision had been exercised. (Internal citations omitted.)(Emphasis added.)
Wallmuth, 813 So.2d at 346.
Significantly, in the body of the Wallmuth opinion, the supreme court only quotes the following portions of art. 2320:
Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
In the above cases, responsibility only attaches, when the . . . teachers or artisans, might have prevented the act which caused the damage, and have not done it.
*442 In addition to alleging independent liability, the plaintiffs in Wallmuth also argued that the School Board was vicariously liable for the actions of its student under LSA-CC art. 2320. Citing that particular article as authority, the supreme court expressly noted:
[T]he School Board is only liable for damages caused by students under their supervision when the school board, the teacher, or other school authorities "might have prevented the act which caused the damages and have not done so." (Emphasis added.)
Wallmuth, 813 So.2d at 349. Immediately following the foregoing quote and citation is a footnote, specifically footnote 8, which provides as follows:
Although the language of La. C.C. art. 2320 technically applies as well to the employer-employee relationship, Louisiana courts have not given effect to the "might have prevented" language since 1906. See Weaver v. W.L. Goulden Logging Co., 116 La. 468, 40 So. 798 (1906). The judicial interpretation of La. C.C. art. 2320 as it applies to employers and employees has been codified by La. R.S. 9:3921 (1991), which provides in part: "notwithstanding any provision in Title III of Code Book III of Title 9 of La. Rev.Stat. of 1950 to the contrary, every master or employer is answerable for the damage occasioned by his servant or employee in the exercise of the functions in which they are employed." No such treatment has been given to the teacher-student relationship outside of the strict language of La. C.C. art. 2320.
Wallmuth, 813 So.2d at 349 n. 8.
Thus it is apparent that the supreme court determines the vicarious liability of a school board for the actions of the students under its supervision under the second paragraph of LSA-C.C. art. 2320 pertaining to "teachers and artisans," as does the jurisprudence cited throughout the majority opinion. However, this is inconsistent with the majority's seeming position that the school board can only be vicariously liable for the acts of its employees under the first paragraph of LSA-C.C. art. 2320 and that only teachers, and not a school board, can be vicariously liable for the actions of its students under the second paragraph of LSA-C.C. art. 2320. Not only does this conclusion conflict with the precepts cited and relied upon as authority in the report, but the aforementioned test for determining the liability of a school board for the actions of its students is wholly different from the "cause and scope of employment test" utilized under the first paragraph of LSA-C.C. art. 2320.
Based on Wallmuth and the pertinent body of jurisprudence, I believe the majority opinion incorrectly focuses on a school board employee's status as a "teacher" as decisive for determining a school board's vicarious liability for the actions of its students.[1] However, as noted above, the jurisprudence makes no such distinction. Rather, the plain text of the second paragraph of Article 2320, while using the terms "teachers and artisans," also employs the language "while under their superintendence." Clearly, other school board employees can supervise students besides teachers. And I believe that it is this "superintending" element (i.e. supervising, exercising control over or managing students) that is the crucial distinction; not one's status as a "teacher" or a "non-teacher."
While it is true that a percentage of fault must be attributed to the intentionally tortious student, contrary to the analysis *443 set forth in the opinion, the school board could and should be held vicariously liable for the tortious student's fault under the particular facts of this case. See Wallmuth v. Rapides Parish School Board, 01-1779 (La.4/3/02), 813 So.2d 341, 346 n. 2; see also. Vaughn v. Orleans Parish School Board, 00-0556 (La.App. 4 Cir. 11/28/01) 802 So.2d 967. The record amply supports a finding that the occurrence was foreseeable, that there was a lack of supervision, and that there was a causal connection between the lack of supervision and the injury sustained by the plaintiff, i.e. the school board employee could have prevented the injury if she had exercised proper supervision. Therefore, I respectfully dissent.
NOTES
[1] The petition refers to the victim as Mary Doe; however, the victim's real name was used throughout the trial. In this opinion, we will use only her initials to maintain her privacy.
[2] As a charter school, Haynes Elementary is an independent public school under the control of its own board of directors rather than the East Baton Rouge Parish School Board. See LSA-R.S. 17:3991.
[3] The School Board provided bus transportation to Haynes Elementary. See LSA-R.S. 17:3991(D) and LSA-R.S. 17:158.
[4] The original trial in this matter ended in a mistrial when Dr. Maurice Haynes, the designee for Haynes Elementary, died suddenly after the trial had begun.
[5] The petition also stated a claim for loss of consortium on behalf of J.Y.'s sister; however, that claim was never presented to the jury.
[6] The School Board has not appealed that portion of the judgment in accordance with the jury's finding assessing it with twenty-five percent of the fault for the incident.
[7] The special interrogatories presented to the jury simply asked whether the School Board was at fault in the incident and whether that fault was a legal cause of J.Y.'s injuries. Although Ms. Hunt was not named as a defendant, and her actions were not specifically mentioned in the special interrogatories, it is clear that the School Board's fault arises out of Ms. Hunt's failure to properly supervise the students at the transfer point. Accordingly, the School Board is vicariously liable for the fault of its employee pursuant to the first paragraph of LSA-C.C. art. 2320.
[8] The relevant portion of LSA-C.C. art. 2320 provides that "[t]eachers . . . are answerable for the damage caused by their scholars . . . while under their superintendence."
[9] The school board also contended that the trial court erred in finding that the teacher had acted negligently in supervising the class. The Fourth Circuit upheld the trial court's finding of negligence. Vaughn, 802 So.2d at 969-70.
[10] The coaches were dismissed without prejudice on the day the trial started. The parties stipulated that at all pertinent times, the coaches were acting in the course and scope of their employment with the DeSoto Parish School Board.
[11] We note that the plaintiff contends the School Board is vicariously liable for the percentage of fault allocated to H.B., pursuant to the second paragraph of LSA-C.C. art. 2320. However, that particular provision seemingly implies that "teachers" could be vicariously liable for the damages caused by their students. Because that provision does not apply to the employer of the teacher, we question the rationale for imposing any such vicarious liability of a teacher on the School Board, especially since the employer is only liable for the percentage of fault independently attributable to its employee.
[12] Indeed, in Doe, the bus driver was not named as a defendant in the suit, despite the fact that the incident occurred while the students were being transported on the bus under the supervision of the basketball coaches for the boys' and girls' teams.
[13] This is distinguished from the School Board's vicarious liability for the negligence of its employee as discussed above.
[14] The plaintiff has not specifically appealed the jury's failure to allocate fault to Haynes Elementary. However, in her third assignment of error, the plaintiff generally asserts that fault should be reallocated to assess 100 percent of the fault to the defendants. Nevertheless, the majority of the argument in her brief to this court concerns the failures of the School Board, with little, if any, mention of the fault of Haynes Elementary. Because the plaintiff does at least generally raise the issue, and because the issue is important to the imposition of vicarious liability pursuant to LSA-C.C. art. 2320, we will briefly discuss the issue of the fault of Haynes Elementary.
[15] The jury found no liability on the part of Haynes Elementary; however, the common carrier doctrine is inapplicable to the school, because it did not own or operate the school bus.
[1] It is worthy of note that the majority apparently defines "teachers" broadly enough to encompass "coaches" who are not necessarily teachers per se.