LOLLEY, J.
[ tThis appeal arises from the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana, wherein Benjamin Baw filed a personal injury suit against Norman Paulson and Farmers Insurance Exchange. After a four-day trial, the jury returned a decision assigning 90% comparative fault to Paulson for the injuries sustained by Baw during a physical altercation. The jury awarded Baw $2,500.00 in past lost wages, $7,500.00 in medical expenses, and $25,000.00 in general damages. A judgment was rendered in accordance with the jury’s verdict, and Baw now appeals. For the following reasons, we affirm the trial court’s judgment.
FACTS
On July 2, 2012, Benjamin' Baw and Norman Paulson became involved' in a physical 'altercation in the parking lot of Trio’s Restaurant (“Trio’s”) in Monroe, Louisiana. Baw, a Monroe Police officer, was dating Ginger Valentine at the time of the incident, and the pair had gone to Trio’s for dinner. Notably, Valentine previously had a romantic relationship with Paulson, who was sitting at the bar with a friend. Paulson, a regular at the bar, had informed the waitress not to serve Baw and Valentine. As Baw -and Valentine attempted to exit the restaurant, Paulson called Valentine a profane name, and Baw said something to Paulson in response. Baw walked outside, followed by Valentine, but as she exited the building, Paulson hit her from behind, knocking her into One of the .vehicles in the parking lot. Baw attempted to restrain Paulson, who punched Baw in the right eye, knocking his glasses off. Baw wrestled Paulson to the ground, and the Trio’s bartender broke up the fight by pulling Baw off of Paulson. |PBaw was treated for injuries sustained during the fight and ultimately underwent lumbar disc surgery. He filed suit against Paul-son.[1]
A four-day trial ensued, in which medical testimony from four experts was heard by the jury. During the trial, the jury heard testimony about Daw’s previous back injuries, one which he sustained in 2004 while doing yard work, and another in 2011 after an awkward sneeze! After the trial, the jury’ returned a verdict, assigning 90% comparative fault to Paulson for the injuries sustained by Baw during the fight. The jury awarded Baw $2,500.00 in past lost wages, $7,500.00 in medical expenses, and $25,000.00 in general damages. A judgment was rendered awarding Baw 90% of $35,000.00, which is $31,400.00. Baw filed a motion for JNOV, and alternatively, requested a new trial on the issue of damages, which the trial court denied. This appeal followed.
DISCUSSION
On appeal, Baw asserts two assignments of error concerning the damages awarded by the jury. Baw argues the jury award for special damages, past lost wages and past medical expenses, is abusively low. Instead, he claims that significantly more damages were proved. Baw also argues that the jury erred in the amount awarded for general damages, claiming that the amount should have been significantly higher based on Baw’s injuries. We disagree.
*190 • In all civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which ^precludes the setting aside of a trial court’s finding of fact unless that finding is clearly wrong in light of the record reviewed in. its entirety. Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC, 2014-2592 (La.04/17/15), 168 So.3d 389. Thus, a reviewing court may not merely decide if it would have found the facts of the case differently, but rather in reversing a trial court’s factual conclusions with regard to causation, the appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court’s conclusion, and the finding must be clearly wrong. Id.; citing, Stobart v. State through Dept. of Transp. & Dev., 617 So.2d 880, 882 (La.1993).
This test requires,.a reviewing court to do more than simply review the record for some evidence which supports or .contro-yerts the trial court’s findings, but.instead, the court must review the entire, record to determine whether the trial court’s finding was clearly wrong or manifestly erroneous. Hayes Fund, supra; citing, Parish Nat. Bank v. Ott, 2002-1562 (La.02/25/03), 841 So.2d 749. The issue to be resolved on review is not whether the judge or jury was right, or-wrong, but whether the fact-finder’s conclusion was a reasonable one. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Notably, reasonable persons frequently can and do disagree regarding causation in particular cases,, but where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.
14Accordingly, an appellate court on review must be cautious not to reweigh the evidence or substitute its own factual findings just because it would have decided the case differently. As stated in Rosell, supra, at 844-5:
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great -deference to the trier of fact’s findings;- for only the factfinder- can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so -internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact-finder’s finding' is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong, (citations omitted).

General Damages

In his assignment of error concerning, general damages, Baw argues that an award of only $25,000.00 is a clear abuse of the jury’s discretion. Baw suggests on appeal that .$125,000.00 is the lowest amount the jury could have reasonably awarded, but offers no support for this assertion. We disagree.
In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts', much discretion must be left to the judge or jury.' La; C.C. art. 2324.1. General damages are those which may not be fixed with pecuniary exactitude; instead, they involve mental or physical pain or suffering, inconvenience,- the- loss of in *191 tellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitely-1 ¿measured in monetary terms. Brammer v. Bossier Par. Sch. Bd., 50,220 (La.App.2d Cir.11/25/15), 183 So.3d 606, 615. The discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. LeBlanc v. Pynes, 46,-393 (La.App.2d Cir.07/13/11), 69 So.3d 1273, 1283-4, writ denied, 2011-1792 (La.10/14/11), 74 So.3d 213. The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Brammer, supra, at 616.
 An appellate court may disturb a damage award only when the record clearly reveals that the trial court abused its discretion in making the award, based on the facts and circumstances peculiar to the case and the individual under consideration. McCullin v. U.S. Agencies Cas. Ins. Co., 34,661 (La.App.2d Cir.05/09/01), 786 So.2d 269, 276. Only after finding that the trier of fact abused its great discretion may the appellate court resort to prior awards, and then only to determine the highest or lowest point reasonably within that discretion. Farmer v. Patrician SLP, L.L.C., 43,601 (La.App.2d Cir.10/01/08), 997 So.2d 578, 581, writs denied, 2008-2606, -2613 (La.01/09/09), 998 So.2d 724, 725, An abusively low award is raised to the lowest amount the trier of . fact could have reasonably awarded, while an abusively high award is reduced to the highest amount the trier of fact could have reasonably awarded. Zimmerman v. Progressive Sec. Ins. Co., 49,982 (La.App.2d Cir.08/12/15), 174 So.3d 1230, writ denied, 2015-1955 (La.11/30/15), 184 So.3d 36.
Here, the jury was to determine the extent of Haw’s injuries and whether Paul-son’s conduct caused Baw to require surgery, or merely aggravated a preexisting condition. The jury found Paulson to be 90% at fault for the altercation, and that finding has not been appealed.- Specifically, the jury found that Paulson, in whole' or in part, was the primary cause of Saw’s injuries during the altercations Notably, there was no specific line on the verdict form which addressed the percentage for which the altercation contributed to Baw’s need for surgery; thus that was left to the jury’s discretion. The issue here is if the jury, after considering all the medical evidence presented, came to an unreasonable decision concerning the cause of Baw?s need for surgery, which ultimately influenced the award of damages. .
Dr. Woods, expert in family practice of medicine, testified to his treatment of Baw over the past 14 years. Dr. Woods related that the first time Baw complained of lower back pain was in 2004 after he hurt his back doing yard work. Baw presented with lower back pain, pain in his left leg, trouble bending forward, and decreased range of motion. The 2004 injury was treated in the office with injections of anti-inflammatory medications, and Baw was given anti-inflammatory medication, pain medication, and muscle relaxers to take at home. During treatment of the 2004 injury Dr. Woods considered an MRI, but it ultimately became unnecessary because Baw recovered through conservative treatment.
|7The next time Baw- complained to Dr. Woods about back pain was in March 2011. Baw told Dr. Woods he was having lower back pain, and stated that his back had gone out and he had fallen down after an awkward sneeze. Baw also. told Dr. Woods he had seen a chiropractor, but did not know the dates. Dr. Woods admitted that this injury was much like the injury in 2004, and sent Baw for. an X-ray, which *192 showed no fractures. He diagnosed Baw with a sprain of the lower lumbar, and treated him with injections, anti-inflammatory medications, muscle relaxers, and pain medication. Unlike 2004, Baw did not improve, and he returned complaining the pain was worse, he could not sit straight in a chair, and could not stand well. Dr. Woods noted decreased range of motion, gave Baw another injection, and ordered physical therapy three times a week for two to three weeks. On March 23, 2011, Dr. Woods ordered an MRI (the “first MRI”), which revealed disc herniation at L5/S1 with some impingement of the left 'SI nerve root. Dr. Woods referred to this as degenerative disc disease.
After reviewing the MRI and considering Baw’s complaints, Dr. Woods referred Baw to Dr. Hardy Gordon, Louisiana Pain Management. Although Dr. Gordon did not testify at trial, selections from his deposition were read into the record. Dr. Gordon recommended three epidural steroid injections. Baw received two injections, and did not return to Dr. Gordon for the third injection because his pain improved. Baw. did not return to Dr. Woods for back pain until after the altercation with Paulson roughly 14 months later.
|SA couple of days.after the fight occurred, Baw went to Dr. Woods complaining of eye pain, lower back pain, headaches, and left leg pain. Dr. Woods’ records reflect that Baw had already been evaluated at Haik and Humble Eye Center, and had no significant eye trauma. Dr. Woods sent Baw for an x-ray, which revealed no fractures. Baw was treated 'with injections in office; sent home with prescriptions for anti-inflammatory medications, muscle relaxers, and pain medications; and told to return to work. About two weeks later, Baw returned to Dr. Woods with increased pain in his lower back and left leg. On July 7, 2012, Dr. Woods recommended physical therapy, and ordered another MRI (the “second MRI”). This MRI showed disc herniation at L5/S1, and Dr. Woods diagnosed Baw with a ruptured disc. Baw requested Dr. Woods send him to Dr. Bernie McHugh, neurosurgeon, and the referral was made.
Dr. McHugh did not testify at trial, but selections from his deposition were read for the record. On February 2, 2013, Dr. McHugh ordered another MRI (the “third MRI”), and stated this MRI showed more prominent disc herniation at L5/S1 than the first MRI. During the deposition, Dr. McHugh compared the first and second MRI images and stated that the herniation appeared larger. The operative report shows that a left L5/S1 partial hemilami-nectomy and discectomy was performed without complication. The discharge summary shows that Dr. McHugh released Baw with instructions not to lift and bend for 6 weeks, not to. drive for 2 weeks, and to return to the clinic in 12 days for staple removal.
|flDr. Donald Smith, board-certified neurosurgeon and expert in the field of neurosurgery, reviewed Baw’s medical records, but never saw him as a patient. Dr. Smith testified that degenerative disc disease is something that develops over a period of years, and stated that Baw possibly had the condition as far back as 2004 because it is not uncommon to see an asymptomatic period in a patient history similar to Baw’s. Dr. Smith also testified that Baw’s leg pain was caused by deterioration and arthritic changes in the disc and associated joints, with disc protrusion which compressed a nerve causing pain to run down into the leg. Dr. Smith explained that although, based on the third MRI, he believed surgery was a reasonable recommendation, he would have attempted more conservative treatment, such as physical *193 therapy, medications, seeing a chiropractor, or epidural steroid injections, before performing surgery.
Dr. Smith testified that the series of MRI images showed a chronic condition and progression over time. He stated that there was not much change between the first and second MRI, but that a difference existed in the comparison between the second and third MRI. Dr.' Smith agreed with Dr. Curtis Partington, consulting neu-roradiolo'gist, who testified by deposition, that the first and second MRI images appear similar, but that at sometime between the second and third MRI a traumatic event occurred which aggravated the preexisting condition, or this was just gradual progression of the degenerative change. Dr. Smith ’was clear that the second MRI, taken 25 days after the altercation with Paulson, did not show evidence of trauma that worsened Baw’s condition. It is undisputed that |inafter the lumbar disc surgery Baw now suffers 13% permanent total body impairment, which Dr. Smith testified is normal after the type of surgery performed- on Baw under the AMA guidelines.'
Taken as a whole the medical evidence presented shows that Baw had a degenerative condition that would possibly progress over time without the intervention of a traumatic event. The jury heard testimony from Drs. Woods and Smith at trial. It is reasonable to believe that the jury found Dr. Smith’s testimony on the issues of degenerative disc disease and spinal trauma to be more credible, given that Dr. Smith is an expert in the field of neurosurgery and Dr. Woods is an expert in the field of family medicine. Moreover, it is important to note that the testimony of Drs. Woods and McHugh is not in direct conflict with the opinions of the consulting Drs. Smith and Partington. Dr. Woods testified that Baw had a history of back injuries and treatment, .and referred Baw to Dr.. McHugh per Baw’s request.- Dr. McHugh evaluated Baw’s condition, and determined that surgery was an appropriate course of.action considering Baw’s symptoms and MRI images. Dr. Smith agreed that surgery was a possible option for addressing the type of pain Baw complained of, and both Drs. Smith and Part-ington were consistent in their independent evaluations of the MRI images that the altercation with Paulson likely did not worsen Baw’s preexisting condition.
After a review of the entire record, it is clear that the jury was not unreasonable or clearly wrong in its conclusion. General damages include damages which cannot be fixed with pecuniary exactitude. The gén-eral damages award of $25,000.00 reflects the jury’s determination that the | ñ altercation with Paulson only partially caused Baw’s eventual need for back surgery. Baw suffered physical injuries from' the altercation with Paulson: a black eye, headaches, and other general pain associated with being’ in a fight. The jury awarded $10,000.00 for Baw’s physical and mental pain and suffering. Baw was also awarded $15,000.00 for loss of enjoyment of life, which considers his permanent disability and inability to return to the lifestyle he conducted previous to the altercation.
The jury .was to choose between two possibilities, and was in the best position to evaluate the credibility of the witnesses. It found Paulson to be majority at fault for the fight in its comparative fault analysis, and it awarded Baw damages considering the injuries and inconvenience he suffered because of that altercation. The discretion granted to a jury in the determination of general damages is vast, and will rarely be disturbed on appeal absent a clear abuse of that discretion. -This record does not reveal a clear abuse of discretion by the *194 jury; therefore, we decline to disturb the amount of-general damages awarded in this case.' This assignment of error is without merit.

Special Damages

In his second assignment of error, Baw argues that the jury award for special damages was abusively low. He contends the award of only $2,500.00 in past lost wages was in error, and argues he proved lost wages of $6,762.00 at trial. Baw further argues the special damages award for past medical bills of $7,500.00 was in error because Baw’s stipulated medical bills totaled $22,389.00. For the reasons below, we disagree. '
112Special damages are those damages that can be determined with some degree of certainty and include past and future medical .expenses. Richardson v. Christus Schumpert Health Sys., 47,776 (La.App.2d Cir.02/27/13), 110 So.3d 264, 274, writ denied, 2013-0621 (La.04/19/13), 112 So.3d 228. The plaintiff bears the burden of proving special damages by a preponderance of the evidence. Id. An award of special damages is reviewed pursuant to the manifest error standard of review. Id. As stated above, an appellate court may disturb a damage award only when the record clearly reveals that the trial court abused its discretion in making the award, based on the facts and circumstances peculiar to the case and the individual under consideration, McCullin, supra.
In regard to past lost wages, Baw argues thát the jury award of only $2,500.00 was abusively low. He contends that he was able to prove his income at the time, and that the seven weeks of post-surgery recovery resulted in lost wages of $6,762,00. The record shows that Baw did lose some sick time and vacation days, but the value of this loss is unclear. The jury was presented only with Baw’s W-2 Wage and Tax Statement for 2012 showing his annual income. Evidence specific to payments received during his recovery was not offered at trial. However, the jury was in the best position to determine if Baw actually lost wages as he claims. Considering the evidence, the jury award for past lost wages, although it deviates from the specific calculation of Baw’s weekly wage multiplied by th,e weeks, of work missed during recovery, was not an abuse of discretion.
| ^Furthermore, although not argued on appeal, we note that under the collateral source, rule, a tortfeasor may not benefit, and an injured plaintiffs tort recovery may not be diminished, because of benefits received by the plaintiff from sources independent' of the tortféasor’s procuration or contribution. Terrell v. Nanda, 33,242 (La.App.2d Cir.05/10/00), 759 So.2d 1026, 1028. Here, we do not see the jury’s award- as being diminished because of payments received by Baw from an outside source, i,e. his workers’ compensation or sick leave pay. It appears from this record that the jury’s award was based on evidence (or lack of it) presented by Baw. The collateral source rule has no bearing in this case on Baw’s lower award.
Here, Baw’s stipulated medical bills totaled $22,389.00, but the jury awarded only $7,500.00. This award is roughly one-third of the total medical bills related to Baw’s treatment after the altercation with Paulson. Based on the medical evidence presented to the jury, discussed previously, it was reasonable for the jury to conclude that the altercation with Paul-son contributed only partially to Baw’s need for surgery. Based on that conclusion it was reasonable for the jury to award Baw only a portion of the stipulated medical bills; therefore, we find no clear abuse of discretion under these circum *195 stances and decline to disturb this award. This assignment of. error is without merit.
CONCLUSION
For the reasons expressed, we find the jury’s award for special damages, $2,500.00 in past lost wages and $7,500.00 in past medical expenses, to be reasonable. Further, we find the $25,000.00 award for 114general damages to also be reasonable. The judgment in favor of Benjamin Baw, which reflects the jury’s assignment of comparative fault, is hereby affirmed. The costs of this appeal are assigned to Baw.
AFFIRMED.
GARRETT, J., concurs.

. The City of Monroe, qualified self-insured municipal entity providing workers' compensation coverage to Baw, intervened requesting to recover benefits paid on behalf of Baw in relation to this incident. The amount awarded by the jury is subject to an agreement with the City’s workers’ compensation insurer.