STEPHENS, J.
Plaintiff, Donnette Koertge, individually and on behalf of her minor daughter, Lauren Koertge, appeals a judgment in the Twenty-Sixth Judicial District Court, Parish of Bossier, State of Louisiana, awarding damages in favor of Plaintiff and against State Farm Fire & Casualty Insurance Company, The Mane Design, LLC, and Marlaina Free ("Defendants"). For the following reasons, we affirm in part and amend in part the trial court's judgment.
FACTS AND PROCEDURAL HISTORY
This matter arises out of the injury to the minor child, Lauren Koertge, who sustained a third degree chemical burn to the back of her scalp after having her hair highlighted at a salon in Bossier City, Louisiana, on July 21, 2015. She was 14 years old at the time. Lauren's mother, Donnette Koertge, filed a petition for damages on behalf of Lauren, as well as herself, against the stylist, Marlaina Free; the salon, The Mane Design, LLC; and their insurer, State Farm Fire & Casualty Insurance Company. Subsequently, Donnette filed a motion for summary judgment. With regard to the matter of liability, the motion was uncontested by Defendants and granted by the trial court. A bench trial was held on January 8, 2018, on the sole issue of damages. The trial court issued a written opinion on April 24, 2018, and made the following award in favor of Lauren: $ 265,000.00 for pain, suffering, and psychological damages; $ 101,520.16 for past medical expenses; and, $ 10,000.00 for future medical expenses-totaling $ 376,520.16. The trial court declined to award damages to Donnette. Judgment was rendered on May 4, 2108. This appeal by Donnette, individually and on behalf of Lauren, ensued.
DISCUSSION
On appeal, Donnette asserts the trial court erred in failing to (1) award damages for the cost of two future hair follicle transplants instead of one; (2) award damages for future counseling expenses; (3) award bystander and loss of consortium damages to Donnette; and, (4) award adequate general damages.
In all civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a trial court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety.
*446 Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC , 2014-2592 (La. 12/8/15), 193 So.3d 1110 ; Baw v. Paulson , 50,707 (La. App. 2 Cir. 6/29/16), 198 So.3d 186. Thus, a reviewing court may not merely decide if it would have found the facts of the case differently, but rather in reversing a trial court's factual conclusions, the appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusion, and the finding must be clearly wrong. Hayes , supra ; Baw , supra . This test requires a reviewing court to do more than simply review the record for some evidence which supports or controverts the trial court's findings, but instead, the court must review the entire record to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Hayes , supra ; Baw , supra .
The issue to be resolved on review is not whether the judge or jury was right or wrong, but whether the factfinder's conclusion was a reasonable one. Rosell v. ESCO , 549 So.2d 840 (La. 1989). Accordingly, an appellate court on review must be cautious not to reweigh the evidence or substitute its own factual findings just because it would have decided the case differently. Id. As stated in Rosell , supra , at 844-5 :
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. (Citations omitted).
One injured through the fault of another is entitled to full indemnification for damages caused thereby. La. C.C. art. 2315. Wainwright v. Fontenot , 2000-0492 (La. 10/17/00), 774 So.2d 70 ; Terry v. Simmons , 51,200 (La. App. 2 Cir. 2/15/17), 215 So.3d 410. Much discretion is left to the judge or jury in its assessment of quantum. La. C.C. art. 2324.1. As a determination of fact, the factfinder's assessment of quantum, or the appropriate amount of damages, is one entitled to great deference on review. Guillory v. Lee , 2009-0075 (La. 6/26/09), 16 So.3d 1104 ; Cooper v. Patra , 51,182 (La. App. 2 Cir. 2/15/17), 215 So.3d 889, writs denied , 2017-0476, 2017-0481 (La. 5/12/17), 219 So.3d 1104 and 219 So.3d 1105. Thus, an award of damages will be overturned only if we find that the award is contrary to the evidence in the record or otherwise constitutes an abuse of the factfinder's discretion. Guillory , supra ; Cooper , supra.
Awards for cost of two hair follicle transplants and future counseling
Donnette asserts in her first two assignments of error that the trial court erred in failing to award the costs of two hair transplants and future counseling expenses. We agree. The recovery of future medical expenses is dependent upon the tort victim establishing the probability of future medical expenses with supporting medical testimony and estimations of their *447 probable cost. Menard v. Lafayette Ins. Co. , 2009-1869 (La. 3/16/10), 31 So.3d 996 ; Terry , supra . Importantly, future medical expenses must be established with some degree of certainty. Menard , supra ; Terry , supra . The proper standard for determining whether a plaintiff is entitled to future medical expenses is proof by a preponderance of the evidence that the future medical expense will be medically necessary. Menard , supra ; Terry , supra .
It is well settled in Louisiana that the trial court is not bound by the testimony of an expert, but such testimony is to be weighed the same as any other evidence. Green v. K-Mart Corp., 2003-2495 (La. 5/25/04), 874 So.2d 838 ; Manno v. Manno , 49,533 (La. App. 2 Cir. 11/19/14), 154 So.3d 655. A trial court may accept or reject in whole or in part the opinion expressed by an expert. Green , supra ; Manno , supra . Further, a trial court may substitute its own common sense and judgment for that of an expert witness when such a substitution appears warranted on the record as a whole. Green , supra ; Manno , supra .
Hair follicle transplants
Dr. Kenneth Sanders, the plastic surgeon treating Lauren, testified at trial that more likely than not, Lauren would need to have two hair follicle transplants in the future in order to resolve a bald spot on the back of her head where the burn occurred and scar tissue exists. Dr. Sanders further testified that the cost of each transplant was approximately $ 10,000.00. The trial court awarded Lauren the cost of one future transplant, but Donnette urges that since no other testimony to the contrary was offered at trial, the trial court should have accepted Dr. Sanders's expert opinion and awarded Lauren the cost of two future transplant surgeries. Dr. Sanders also testified that he would not know whether Lauren needed the hair transplants until he was able to examine the area after her most recent surgery, which had occurred on December 27, 2017, less than two weeks prior to trial. Defendants argue this testimony by Dr. Sanders prevented a finding that the hair follicle transplants were necessary and inevitable.
Dr. Sanders testified in detail regarding the nature of the five scar revision surgeries he had performed on Lauren to reduce the size of her scar-placing Lauren under general anesthesia, cutting and removing a strip of her scalp, then pulling the skin from each side of the wound and suturing it together. He explained that after each surgery, the tissue relaxed and softened and slowly stretched out and pulled back apart. Dr. Sanders opined that after Lauren's most recent scar revision surgery, they achieved their maximum improvement and a future scar revision surgery would be futile. While Dr. Sanders was able to pull the skin close enough together to get "hair to hair" during the last surgery, he testified that, "I don't anticipate that to last. I think it is going to spread back open a certain amount and then it doesn't make much sense to continue cutting ... so the only other thing to do would be a hair transplant." Dr. Sanders provided details regarding the nature and procedure of the hair follicle transplant and clearly testified that "more likely than not" Lauren would need two hair follicle transplants. Defendants did not present any expert testimony to rebut that of Dr. Sanders.
Based on its decision to award Lauren damages for the cost of a future hair follicle transplant, the trial court clearly found Dr. Sanders was credible. After a review of the record in its entirety, we do not find a reasonable factual basis for the trial court's seemingly arbitrary decision to reject Dr. Sanders's explicit testimony that *448 more likely than not, Lauren would require two hair follicle transplants in the future. The record simply does not support the trial court's award for one future hair follicle transplant rather than two. We also note that the burden of proof for future medical expenses does not require Dr. Sanders to know with certainty whether Lauren will need the two transplants. Based on Dr. Sanders's uncontradicted testimony, Donnette sufficiently proved by a preponderance of the evidence the necessity, probability, and cost of a second hair follicle transplant. Therefore, we find that this assignment of error has merit and the trial court abused its discretion. It was clearly wrong in awarding the costs of only one future hair follicle transplant when the uncontroverted evidence showed Lauren would need two.
Future counseling
As to Lauren's counseling, Dr. Laura Harris, the psychologist who evaluated and treated Lauren, testified that she had originally diagnosed Lauren with post-traumatic stress disorder, which extended for a period of approximately 15 months. However, Lauren's condition no longer fit that diagnosis and she had more recently diagnosed Lauren with a condition described as "adjustment disorder with mixed anxiety and depressed mood." Dr. Harris testified in detail regarding the various psychological assessments she had performed on Lauren and the clinical interviews she had conducted with her, based on which, Dr. Harris opined Lauren's injury permanently affected her, continues to affect the way she interacts with other people, and will affect the way she develops relationships throughout her life. Dr. Harris further testified that Lauren would require 30 weeks of treatment but possibly 36 to 64 months, depending on her progress. She stated the recommended treatment is weekly, and the rate for the sessions is $ 150/hour. Defendants offered no expert testimony to refute that of Dr. Harris.
The trial court interjected several times during Dr. Harris's testimony. Then after direct, cross, and redirect examinations were complete, the trial court questioned Dr. Harris directly, primarily with regard to why Dr. Harris thought future counseling was necessary for Lauren and how Lauren's psychological injury was going to negatively impact her future in ways such as earning capacity and ability to go to college. The trial court then characterized Dr. Harris's explanation as "sort of speculative" and suggested she was "being a little bit excessive here in this diagnosis." In response to the testimony that Lauren had been resistant to counseling, the trial court inquired of Dr. Harris, "I mean, aren't there people who would just rather have a drink and not talk about stuff?" To which Dr. Harris responded, "Yeah, that can really be a problem. There are a lot of alcoholics and addicts who don't want to talk about their problem[.]" The trial court further asked Dr. Harris, "[At] some point in time, don't we have to say, rock and roll. Deal with it. You know?" To which Dr. Harris responded only, "um," before the trial court continued on, eventually stating, "Well maybe if you're trying to forget something, maybe talking about it every week is not the best way to get over it." Dr. Harris then explained that neither the research nor her practical experience showed the trial court's assertion to be true. She testified that instead, "when they don't talk about it, they don't usually forget it."
The trial court awarded Lauren $ 15,000.00 for psychological damages but declined to award damages for future counseling expenses. It opined that Dr. Harris's testimony that Lauren was suffering from post-traumatic stress disorder *449 was "refuted" by the fact that Lauren "is a 4.0 student and has participated fully in all school functions and extracurricular activities ... plays school soccer and has a part time job." The trial court further stated in its written opinion that Lauren "appeared to be an extremely bright, attractive, articulate, well put together young woman with a promising future."
After reviewing the record in its entirety, including the transcript of the trial court's questioning of Dr. Harris, it is clear that the trial court did not simply substitute its own common sense and judgment for that of Dr. Harris, which would have been permissible. Instead, it appears the trial court substituted its own personal opinion regarding the utility of psychological counseling in general for the expert opinion of Dr. Harris regarding Lauren's need for counseling in the future. Dr. Harris was qualified and accepted as an expert in counseling and school psychology. She testified unequivocally that Lauren would require future counseling sessions to address the anxiety and depression she continues to struggle with due to her injury and painful and prolonged treatment. There was no testimony offered by Defendants to refute this testimony by Dr. Harris, and the record simply does not warrant the trial court's rejection of Dr. Harris's uncontradicted expert testimony. We cannot condone the trial court's substitution of its own opinion for that of Dr. Harris. Therefore, we find this assignment of error has merit and the trial court abused its discretion and was clearly wrong in failing to award Lauren damages for future counseling expenses. Based upon the record, we conclude Donnette presented sufficient evidence to support an award for future counseling expenses in the amount of $ 4,500.00, which is 30 weeks of weekly, hour-long sessions.
Accordingly, we amend the portion of the trial court's judgment regarding future medical expenses to include awards to Lauren for a second hair follicle transplant at the cost of $ 10,000 and future counseling at the cost of $ 4,500.00, thereby increasing the amount of the total award for future medical expenses to $ 24,500.00.
Award for bystander and loss of consortium damages
Donnette asserts in her third assignment of error that the trial court erred in failing to award damages to her bystander injuries and loss of consortium. We disagree.
As to bystander damages, there are four basic requirements to recover "bystander" damages, or damages for mental anguish or emotional distress suffered as a result of another person's injury. These requirements are: (1) the claimant must have a specifically enumerated relationship with the injured person; (2) the claimant must have viewed an event causing injury to the injured person or have come upon the scene of the event soon thereafter; (3) the harm to the injured person must have been severe enough that one could reasonably expect the observer to suffer serious mental distress; and (4) the claimant must suffer emotional distress that is severe, debilitating, and foreseeable. La. C.C. art. 2315.6 ; Trahan v. McManus , 1997-1224 (La. 3/02/99, 728 So.2d 1273 ; Lejeune v. Rayne Branch Hosp. , 556 So.2d 559 (La. 1990) ; Cooper , supra .
When Lauren reported she was experiencing discomfort while having her hair highlighted, Donnette was contacted and was present at the salon immediately after Lauren was injured. Donnette testified that when she arrived at the salon Lauren "wasn't loudly crying, but she had tears and she said it was throbbing." The evidence further showed that at the time *450 Lauren's injury occurred, the only visible sign was a small red line on her scalp. Donnette, therefore, did not experience an immediate shock of witnessing a traumatic event that caused Lauren severe and apparent harm. We do appreciate, though, the subsequent difficulty Donnette likely experienced witnessing Lauren endure such pain and suffering over the course of her treatment. However, the record is devoid of any evidence showing that the emotional distress Donnette understandably experienced as a result of Lauren's injury rose to the level of severe and debilitating. Accordingly, the trial court's failure to award bystander damages to Donnette was not clearly wrong or manifestly erroneous.
Donnette further asserts she is entitled to damages for lost consortium. A parent's loss of consortium claim includes damages for: (1) loss of love and affection, (2) loss of society and companionship, (3) loss of performance of material services, (4) loss of financial support, (5) loss of aid and assistance, and (6) loss of fidelity. Brammer v. Bossier Parish Sch. Bd. , 50,220 (La. App. 2 Cir. 11/25/15), 183 So.3d 606. A child may sustain physical injury without necessarily causing his parents a loss of consortium. Doe ex rel. Doe v. DeSoto Parish Sch. Bd. , 39,779 (La. App. 2 Cir. 6/29/05), 907 So.2d 275, writ denied , 2005-2020 (La. 2/10/06), 924 So.2d 167.
The evidence shows that Lauren suffered a severe injury that required lengthy and extensive treatment; Donnette was present for the surgeries and procedures performed on Lauren; and, Donnette was responsible for Lauren's at-home wound care regimen. However, the record does not show that Donnette lost any material services, financial assistance or fidelity as a result of Lauren's injuries. Furthermore there was no evidence that Donnette's relationship with Lauren suffered as a result of her injury. Based upon the facts elicited in this case, we discern no abuse of the trial court's discretion in the factual finding that Donnette suffered no loss of consortium as a result of Lauren's injury. In the absence of a clear showing of manifest error, we decline to reverse that ruling. This assignment of error is without merit.
Award for general damages
Finally, Donnette asserts in her fourth assignment of error that the general damage award to Lauren should be increased. Specifically, Donnette argues that in accordance with comparable decisions, the general damages award to Lauren should be increased based on the following factors: the number of medical and surgical procedures Lauren has undergone, the length of Lauren's continued treatment, and the ratio of the amount of Lauren's past medical expenses to the amount of the general damage award. We disagree.
General damages are those which may not be fixed with pecuniary exactitude; instead, they involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitely measured in monetary terms. Thomas v. Morris , 51,112 (La. App. 2 Cir. 1/11/17), 211 So.3d 647, writ denied , 2017-0442 (La. 4/24/17), 219 So.3d 1099. The discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. LeBlanc v. Pynes , 46,393 (La. App. 2 Cir. 7/13/11), 69 So.3d 1273, writ denied , 2011-1792 (La. 10/14/11), 74 So.3d 213. The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Brammer , supra.
*451 There is no mechanical rule for determining general damages. The facts and circumstances of each case control. Terry , supra . The nature, relative severity and extent of bodily injuries are qualitative factors that must first be considered by the trier of fact in awarding general damages. Id. The duration of a plaintiff's injury symptoms and the duration of treatment are relevant quantitative factors that must also be taken into account. Id.
Here, the record shows that Lauren experienced significant pain and suffering as a result of her injuries. Her injury occurred the summer before she began her freshman year of high school. By the time she started school, Lauren had a large, gruesome open wound on the back of her head, measuring approximately 10 x 4.5 centimeters. She was teased and taunted and even had a fellow student photograph her wound and bandage. Lauren began counseling after she reported to Donnette that she had been experiencing nightmares for a period of time. Lauren has undergone five scar revision surgeries and numerous wound care treatments which were painful and traumatic for Lauren and frequently involved Lauren being exposed to the smell of her own burning flesh as the wound was cauterized. However, we also note that following the necessary hair follicle transplants, which, according to Dr. Sanders's testimony, should be completed within a year and a half from trial, Lauren is unlikely to require any more surgeries or procedures, experience any further pain or discomfort associated with surgeries or procedures, or have any visible scarring or any permanent disabilities.
There is clearly a reasonable factual basis in the record for the trial court's award for general damages. In its written opinion, the trial court plainly outlined the testimonial and evidentiary support for its assessment of general damages-the number and nature of Lauren's surgeries, the painful wound care regimen Lauren endured, the serious discomfort caused by the surgeries, the past medical expenses Lauren had incurred, the need for a future hair follicle replacement procedure, and the psychological damage Lauren endured, specifically teasing and bad dreams.
The trial court was in the best position to assess both the quantum and the credibility of the witnesses. Its written opinion as well as the transcript of the trial indicate that it adequately considered both the qualitative and quantitative factors in assessing general damages. The trial court went so far as to explain that while Louisiana lacked many quantum reports dealing with factually similar cases, in reaching its decision, it had reviewed cases involving significant burns.
We will not replace the trial court's findings with our own mechanical computation of general damages or credibility determinations, which is in essence Donnette's request. The trial court is given wide discretion in its findings, and here, there is clearly a reasonable factual basis in the record to support its award of general damages. Accordingly, we find the trial court did not abuse its discretion and its award of general damages is not clearly wrong. This assignment of error is without merit.
CONCLUSION
For the foregoing reasons, we affirm the portion of the trial court's judgment in favor of Donnette Koertge, on behalf of the minor child, Lauren Koertge, awarding Lauren $ 265,000.00 in general damages. We further affirm the trial court's denial of bystander and loss of consortium damages to Donnette Koertge. We amend the portion of the trial court's judgment regarding future medical expenses, increasing the award by $ 14,500.00, for a total *452 award of $ 24,500.00 for that element of damages. Costs of this appeal are assessed one-half to Plaintiff, Donnette Koertge, and one-half to Defendants, State Farm Fire & Casualty Insurance Company, The Mane Design, LLC, and Marlaina Free.
AFFIRMED IN PART; AMENDED IN PART; AS AMENDED, AFFIRMED.